IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UTICA MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-2306-D |
| | § | |
| HANOVER INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Utica Mutual Insurance Company ("Utica"), as assignee of JT Underground & Utility Construction, Inc. ("JT Underground"), for breach of contract, violation of Tex. Ins. Code Ann. § 542.060, and, in the alternative, reformation of an insurance policy against defendant Hanover Insurance Company ("Hanover"). Utica moves for partial summary judgment on its breach of contract and Texas Insurance Code claims, and Hanover moves for summary judgment, leave to amend its answer, and leave to file a third-party complaint. For the reasons that follow, the court grants in part and denies in part Hanover's motion for summary judgment, denies Utica's motion for partial summary judgment, grants Hanover leave to amend its answer, and denies Hanover's motion for leave to file a third-party complaint.

I

Under an "Agency Agreement" between K&S Group, Inc. ("Keystone") and Hanover, effective November 29, 2004, Keystone became "an Agent of [Hanover] with authority to solicit, bind, issue and deliver policies of insurance that [Hanover was] licensed to write for the product line(s) designated in the Schedule of Authority[.]"  P. App. (ECF No. 23) at 3.[1] The Schedule of Authority attached to the Agency Agreement stated that, "[a]s an Agent for [Hanover], [Keystone] may act as a representative of [Hanover] in negotiating, servicing or effecting [commercial inland marine] policies of insurance issued in the name of [Hanover.]" *Id.* at 11.

Effective May 29, 2018, Keystone issued to JT Underground a Commercial Inland Marine Insurance Policy, Policy No. IHD D596038 00 ("the Policy"), which was renewed four times ("the Renewal Policies"), providing continuous coverage from May 29, 2018 through March 24, 2023.  The Policy distinguished between scheduled and unscheduled equipment and stated:

> we cover any "Contractor's Equipment" that is listed in the most recent "Report of Scheduled Equipment" provided to us by your agent. . . .  At the end of the policy period, you are required to provide us with an updated "Report of Scheduled

---

[1]When both sides to a case move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e. g.*, *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

Equipment[,]"[] reflecting all additions and deletions made
during the policy period. If you own any "Contractor's
Equipment" prior to the effective date of this policy and it is not
listed on the most recent "Report of Scheduled Equipment" on
file with us, you must send us an updated "Report of Scheduled
Equipment" in order for coverage on this "Contractor's
Equipment" to be in effect.

P. App. (ECF No. 23) at 53.

On July 12, 2021 JT Underground sent an email to Keystone requesting that a 2021

Vermeer Bore Rig ("the Rig") be added to the third Renewal Policy ("Third Renewal

Policy"), which was in effect at the time, and provided the limit of insurance applicable to

the Rig, which was $250,000. The parties do not dispute that this email constituted a Report

of Scheduled Equipment. Keystone processed the policy change request in its own agency

management system, sent JT Underground an email stating that the Rig had been added to

the Third Renewal Policy, and sent JT Underground a form entitled "Evidence of Property

Insurance," which stated that the Rig had been added to the Third Renewal Policy. The form

stated that it "confer[ed] no rights upon" the insured, "d[id] not affirmatively or negatively

amend, extend, or alter the coverage afforded by the policies," and "d[id] not constitute a

contract between the issuing insurer(s), authorized representative or producer, and the

additional interest." D. Br. (ECF No. 39) at 12. Utica alleges that Keystone received the

Report of Scheduled Equipment on Hanover's behalf and that Keystone affirmatively added

the Rig to the Third Renewal Policy. Hanover maintains that Keystone did not add the Rig

to the Third Renewal Policy; Keystone did not have the authority to do so; Hanover did not

receive notice of the Rig from Keystone or from JT Underground; and, as a result, Hanover

issued the fourth renewal of the policy ("Fourth Renewal Policy") without the Rig listed as scheduled equipment.

On December 5, 2022, while the Fourth Renewal Policy was in effect, JT Underground notified Keystone that the Rig had been damaged in an accident. On December 6, 2022 Keystone submitted an equipment physical damage claim to Hanover for the Rig. On January 6, 2023 Hanover's claims adjuster notified JT Underground that he was not able to locate the Rig on the schedule of equipment on the Fourth Renewal Policy. On or about January 20, 2023 Hanover told Keystone that, because the Rig was unscheduled, coverage was limited to $1,000 under the Policy.

After Hanover refused to pay the full amount of the damage to the Rig, Utica paid $167,267.89 to JT Underground (the amount of damage to the Rig) in exchange for an assignment of JT Underground's cause of action against Hanover.

On November 22, 2023 the court entered a scheduling order providing that motions for leave to amend the pleadings must be filed by July 26, 2024 and that motions for leave to join parties were due by December 20, 2023. On May 31, 2024 Utica moved for leave to file a third-party complaint against Keystone for common law indemnity and contribution. On June 21, 2024 Hanover moved for partial summary judgment on its claims for breach of contract and under Tex. Ins. Code Ann. § 542.060. On July 23, 2024 Utica moved for leave to file an amended complaint, by which it seeks to assert new affirmative defenses not previously pleaded, but some of which it had raised in its response to Utica's motion for partial summary judgment. On July 29, 2024 Hanover moved for summary judgment. The

- 4 -

court is deciding these motions—all of which are opposed—on the briefs, without oral argument.

## II

The court turns first to the motions for summary judgment.

## A

Hanover objects to Utica's response to Hanover's motion for summary judgment.

Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "[T]hese facts must be particularized, not vague or conclusory." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)).

Hanover first objects to the statement in the affidavit of James Leeker ("Leeker"), president of Keystone, that Hanover's procedure for changing policies while they were in effect was "different than what is commonly used by other insurers." D. Reply (ECF No. 42) at 2. Hanover maintains that this is opinion testimony and that Leeker has not provided a factual basis for the statement. *Id.* The court declines to strike this statement because the affidavit states that Leeker, as Keystone's president, was "familiar with the agreements which Keystone enters with other entities, including insurance companies," and with "email communications exchanged between Keystone and its clients and insurers," Leeker Aff. (ECF No. 41-1) at 1, providing a basis for the observation that Hanover's procedure was

- 5 -

different from what is commonly used by other insurers. And because this statement purports to be based upon Leeker's personal knowledge, it is not an opinion.

Hanover also objects to the statements in Leeker's affidavit that Hanover instructed Keystone not to send documents related to equipment changes until the end of the year audit, which Hanover contends are hearsay, vague, and not based on personal knowledge. D. Reply (ECF No. 41) at 3. The court declines to strike this evidence because the affidavit states that Leeker, a custodian of Keystone's records, based his comments on documents contained in Keystone's records, of which he had personal knowledge. These statements are not hearsay because they do not contain statements being offered for the truth of the matter asserted, and they are not impermissibly vague. And, under Fed. R. Evid. 801(d)(2)(A), (C), or (D), an opposing party's statement is not hearsay if the statement is offered against the opposing party and was made by the party in an individual or representative capacity; was made by a person whom the party authorized to make a statement on the subject; or was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.

Hanover also objects to Leeker's statements that he "approved in writing the assignment of claims from JT Underground to Graphic Arts Mutual Insurance Company" ("Graphic Arts") and that he was aware that the assignment would permit Graphic Arts "to pursue [] Hanover for the amounts it paid in connection with the Rig." *Id.* at 3. Hanover maintains that the statements are vague, conclusory, and lack particularity because they do not explain how Leeker knew of the intent of the assignment or explain "when, how, on

behalf of whom, and to whom he provided this alleged 'written consent.'" *Id.* at 3-4.  The court declines to strike these statements because they are neither vague, conclusory, nor lacking in particularity.

Hanover also objects to the incorporation-by-reference of the arguments and authorities in Utica's prior motions addressing arguments that Hanover raised again in its motion for summary judgment.  Hanover asserts that this violates the requirement under the local civil rules of this court that a responding party set out "contentions of fact and/or law, and argument[] [and] authorities."  *Id.* at 4 (citing N.D. Tex. Civ. R. 7.1(d)).  The court disagrees.  Although the local civil rules map out a preferred method for parties to move for or oppose summary judgment, the local rules are subject to the national rules.  And Fed. R. Civ. P. 10(c), entitled "Adoption by Reference; Exhibits," provides, in pertinent part, that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  So under Rule 10(c), Utica was permitted to adopt the contents (including the arguments) of other pleadings.

Finally, Hanover objects to references to documents mentioned in Utica's response that are not attached as part of its appendix, contending that this violates the requirement of N.D Tex. Civ. R. 7.1(i)(1) that documents be included in the appendix.  In particular, Hanover maintains that the Release and Assignment agreement and the Agency Agreement are not included in Utica's appendix.  Although the usual method for a party to comply with the appendix requirements of the local civil rules is to file and cite its own appendix, this evidence is properly before the court because both agreements are included in Utica's

appendix accompanying its own summary judgment motion. Indeed, under N.D. Tex. Civ. R. 56.5(c), when citing the record a party is not confined to its own appendix: it can cite "the opposing party's appendix," meaning that a document need not be included in the party's own appendix to be citable.

B

To be entitled to summary judgment on a claim or defense on which the moving party will bear the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When a party moves for summary judgment on a claim or defense on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate

specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 248. The nonmovant's failure to produce proof as to any essential element of a claim or defense renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

A party may not rely on affirmative defenses that have not been pleaded to defeat or defend summary judgment. *Kirkindoll v. Nat'l Credit Union Admin. Bd.*, 2014 WL 7178005, at *7 (N.D. Tex. Dec. 17, 2014) (Fitzwater, J.) ("A movant can neither obtain summary judgment nor avoid the opposing party's summary judgment motion based on an unpleaded claim."); *Jacobs v. Tapscott*, 2006 WL 2728827, at *8 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[Parties] cannot avoid summary judgment, however, based on unpleaded claims."), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). A party cannot defeat a summary judgment motion based on a claim or defense that was not pleaded before the motion was filed; this would permit the party to "undermine the [the non-amending party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended [pleading] . . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its [pleading]." *Overseas Inns S.A. P.A.*

*v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting this court's opinion below), *aff'g*, 685 F.Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.). Therefore, in deciding whether to grant summary judgment for either party, the court at this time will not consider Hanover's arguments about the affirmative defense of lack of standing due to the contract's anti-assignment clause, *see Cont'l Cas. Co. v. Dr. Pepper Bottling Co. of Tex.*, *Inc.*, 416 F.Supp.2d 497, 510 (N.D. Tex. 2006) (Ramirez, J.), because this affirmative defense is not pleaded in Hanover's original answer.

C

To prove a breach of contract claim under Texas law, the party asserting the claim must prove "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018). Under the breach of contract element, the parties dispute whether Keystone was authorized to, and in fact did, change the Policy to include the Rig as scheduled equipment. They also contest whether Keystone was expressly authorized as Hanover's agent to receive the Report of Scheduled Equipment on Hanover's behalf. Resolving this dispute will determine whether submitting the report to Keystone constituted providing it to Hanover, thereby placing it "on file" with Hanover, making it scheduled under the Fourth Renewal Policy, and entitling JT Underground to recover the full amount of the damage to the Rig. The parties also contest whether JT Underground suffered damages.

Determining whether the Policy was breached depends on the scope of authority

granted to Keystone to receive Reports of Scheduled Equipment for Hanover and to amend coverage under the Policy. Whether an agency relationship exists is a question of fact. *See Novamerican Steel, Inc. v. Delta Brands, Inc.*, 231 S.W.3d 499, 511 (Tex. App. 2007, no pet.); *Horne v. Charter Nat'l Ins. Co.*, 614 S.W.2d 182, 184 (Tex. App. 1981, writ ref'd n.r.e.). "Under Texas law, agency is a legal relationship created by the express or implied agreement between the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's control." *GWTP Invs., L.P. v. SES Americom, Inc.*, 497 F.3d 478, 484 (5th Cir. 2007) (quoting *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir.1980)). "In Texas, it is 'well settled that if an agent's acts are within the scope of his authority, then notice to the agent of matters over which the agent has authority is deemed notice to the principal,'" *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 600 Fed. Appx. 230, 235 (5th Cir. 2015) (per curiam) (quoting *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex. 1981)), but "[a]n agent's notice of matters which [are] outside the scope of the agency or not related to its purposes is not imputed to the principal," *id.* (first brackets original) (quoting *Tamburine v. Ctr. Sav. Ass'n*, 583 S.W.2d 942, 949 (Tex. Civ. App. 1979, writ ref'd n.r.e.)).

Determining the scope of Keystone's authority depends on an interpretation of the Agency Agreement and the attached Schedule of Authority. Under Texas law, "[w]hile the interpretation of an unambiguous contract is a question of law . . . , the interpretation of an ambiguous contract is a question of fact[.]" *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 406

(5th Cir. 2006). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). "If the contract's meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning, it is ambiguous." *Am. Tobacco Co.*, 463 F.3d at 407 (citing *Coker*, 650 S.W.2d at 393-94).

D

The scope of authority granted to Keystone depends on the language of the Agency Agreement. The Agency Agreement does not explicitly mention the authority to receive Reports of Scheduled Equipment, such that they became binding on Hanover. It does, however, grant Keystone express authority to "solicit, bind, issue and deliver policies of insurance that [Hanover is] licensed to write" for specific policies. P. App. (ECF No. 23) at 3. And the Schedule of Authority expressly authorizes Keystone to "act as a representative of the Company in negotiating, servicing or effecting policies of insurance issued in the name of the Company" for certain policies. P. App. (ECF No. 23) at 11. Utica contends that the express authority to act as Hanover's agent in "servicing or effecting" the Policy granted Keystone the authority to add coverage to the Policy and to receive updated Reports of Scheduled Equipment on Hanover's behalf. Hanover posits that the Agency Agreement does not grant Keystone the authority to change the Policy or the scheduled equipment covered under its Policy.

Looking to the four corners of the Policy, it remains unclear whether this language confers this specific authority to change the Policy coverage or receive Reports of Scheduled

- 12 -

Equipment.   Utica points to language in the Agency Agreement stating that, upon termination, Keystone's "authority to issue claims, drafts, bind any new risk, or add insurance or increase limits on existing policies without [] prior written approval ceases." P. App. (ECF No. 23) at 9.  Utica contends that this means that Keystone was expressly authorized to bind new risks prior to termination.  While this is one possible reading of the Agency Agreement, it is also possible that Keystone never received that authority and the parties simply intended to make clear that whatever authority was granted was withdrawn upon termination of the Agency Agreement.

Because the Policy does not define "servicing or effecting" and both parties have adduced evidence supporting their respective interpretations of the Agency Agreement and Schedule of Authority, the court concludes that neither party has established beyond peradventure that the Rig was or was not scheduled under the Policy.  There is a genuine fact issue concerning whether Keystone was authorized to add scheduled equipment to the Policy or to receive Reports of Scheduled Equipment on Hanover's behalf.

E

Hanover also asserts that it is entitled to summary judgment on Utica's breach of contract claim because JT Underground was not damaged.  Hanover maintains that the Policy provides that Hanover "will not be liable for any part of a loss that has been paid or made good by others,"  P. App. (ECF No. 23) at 71, and that, because Utica paid JT Underground the amount of the loss, the loss has been paid or made good.  Hanover therefore contends that JT Underground is not entitled to payment for the loss under the Policy and that it suffered

- 13 -

no damages when Hanover failed to pay the full amount of the loss.[2]  Utica responds, however, that it did not pay JT Underground because it was liable to JT Underground for the loss, but because it was paying the amount of the damage in exchange for the assignment of JT Underground's right of action against Hanover.  Therefore, JT Underground is not precluded from recovering its damages if the Policy is found to have been breached.

F

Because there remains a genuine dispute as to whether the Policy was breached and whether JT Underground suffered damages as a result, the court denies both motions for summary judgment on Utica's breach of contract claim.[3]

III

Hanover contends that Utica cannot bring a claim under Tex. Ins. Code § 542.060 because such claims are not assignable by the insured.  The Supreme Court of Texas has acknowledged that "[c]ourts addressing assignability have often distinguished between

---

[2]Although Utica maintains that Hanover "waived application of this policy provision by failing to plead it in its Original Answer," P. Reply (ECF No. 37) at 10, Utica neither asserts nor cites any law to suggest that this is an affirmative defense.  Because this clause relates directly to whether JT Underground incurred any damages as a result of a breach of the contract—which is an essential element of a breach of contract claim—this assertion is a defense to Utica's *prima facie* case, not an affirmative defense that must be pleaded under Rule 8(c).

[3]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).  There are at least the genuine issues of material fact identified in today's memorandum opinion and order.

- 14 -

claims that are property-based and remedial and claims that are personal and punitive, holding that the former are assignable and the latter are not." *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87-89 (Tex. 2004) (holding that Texas Deceptive Trade Practices-Consumer Proection Act ("DTPA") claims "generally are also punitive rather than remedial" and thus unassignable).

Courts frequently hold that Texas Insurance Code claims are similarly personal and punitive and unassignable. *See, e.g.*, *Am. S. Ins. Co. v. Buckley*, 748 F.Supp.2d 610, 626 (E.D. Tex. 2010) ("[S]tatutory remedies under the Texas Insurance Code are personal and punitive in nature and the Insurance Code makes no provision for assignability."); *Great Am. Ins. Co. v. Fed. Ins. Co.*, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006) (Sanders, J.) (extending the *PPG Industries* holding on assignability to Texas Insurance Code claims because, like DTPA claims, they are "personal and punitive in nature," the Texas Insurance Code "makes no provision for assignability," and its damages "are intended to encourage suits by aggrieved consumers," and noting that "each and every policy argument articulated by the Texas Supreme Court against assignment of a DTPA claim applies with equal force to a claim brought under the Texas Insurance code" (citation omitted)); *TuYo Holdings, LLC v. Transamerica Life Ins. Co.*, 2022 WL 17490982, at *3 (W.D. Tex. Dec. 6, 2022) ("[T]his Court concludes causes of action arising under the Texas Insurance Code may not be assigned. . . . [T]he Court finds Insurance Code remedies are personal and punitive in nature, the Texas Insurance Code contains no provision for assignability, and Texas Insurance Code damages are intended to encourage suits by aggrieved consumers, only.").

- 15 -

Because Utica has provided no binding authority for the proposition that Chapter 542 claims are assignable, the court grants summary judgment dismissing Utica's claim under Chapter 542.

IV

Turning to Utica's alternative reformation claim, concerning which only Hanover moves for summary judgment, the parties dispute whether Keystone was authorized to make Policy changes such that the failure to include the Rig on the Third and Fourth Renewal Policies was a mistake attributable to Hanover, meaning that the Policy should be reformed. Under Texas law, "reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987) (citation omitted).

Hanover contends that there was no mutual mistake because Hanover never received notice of the Rig and thus was not mistaken in leaving it out of the Policy. Utica maintains that there was a mutual mistake because Hanover authorized Keystone to act on its behalf and the failure to include the Rig on the renewal policies was therefore Hanover's mistake, and, even if not, "unilateral mistake by one party and knowledge of that mistake by the other party is equivalent to mutual mistake." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 857 (5th Cir. 2014); *see also Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). Utica posits that Hanover engaged in inequitable conduct when it established a procedure for how to add equipment to its policies, followed that procedure as to earlier

- 16 -

policies, and then failed to do so with respect to later policies.

Because the summary judgment record contains a genuine fact issue regarding whether Keystone was or was not authorized to make such changes to the policies, there is still a genuine question of fact concerning whether there was an original agreement attributable to Hanover and whether JT Underground's potential mistake in failing to include the Rig on the renewal policies was attributable to Hanover. For this reason, the court denies Hanover's motion for summary judgment on this claim.

V

The court now turns to Hanover's motion for leave to file an amended answer.

A

Because Hanover filed the instant motion before the expiration of the deadline for filing motions for leave to amend the pleadings under the scheduling order, the jurisprudence of Rule 15(a), rather than Rule 16(b)(4), applies. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) (Fitzwater, C.J.). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citation omitted). "The court should freely give leave when justice so requires." Rule 15(a)(2). Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)). "[T]he district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (collecting cases). "When, as here, [a] part[y] file[s] a motion for leave to amend by the court ordered deadline, there is a 'presumption of timeliness.'" *Carmack v. Park Cities Healthcare, LLC*, 2017 WL 6025264, at *2 (N.D. Tex. Dec. 5, 2017) (Fitzwater, J.) (quoting *Poly-Am., Inc. v. Serrot Int'l, Inc.*, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.)).

B

Utica has not responded to Hanover's motion for leave to amend and therefore has not rebutted the presumption of timeliness. Utica comments in a footnote in its reply brief that asserting additional affirmative defenses this late in the proceedings "is attempting to broaden not only the scope of this lawsuit, but the scope of the Motion for Partial Summary Judgment as well." P. Reply (ECF No. 37) at 2 n.1. But the court will grant Hanover leave to file its amended answer because the court has decided the summary judgment motions without considering the affirmative defenses raised in the proposed amended answer, this is Hanover's first amended answer and it responds to plaintiff's first amended complaint, and the motion for leave to amend was timely and is presumed to be timely.

VI

The court now considers Hanover's motion for leave to file a third-party complaint.

A

Hanover filed its motion for leave to file a third-party complaint more than five months after the deadline prescribed in the November 22, 2023 scheduling order for filing

- 18 -

a motion for leave to join a party. When, as here, the deadline for seeking leave to join parties has expired, a court considering a motion for leave to join parties must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.) (citation omitted). Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb.2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Instead, the movant must show that, despite its diligence, it could not reasonably have met the scheduling deadline. *See S&W Enters.*, 315 F.3d at 535; *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing 6A Wright et al., Federal Practice & Procedure § 1522.1 (2d ed. 1990)); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

"In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *3 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) (citing *S&W Enters.*, 315 F. 3d at 536). The court considers

the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

Considering the relevant factors holistically, the court concludes that Hanover has not demonstrated good cause for extending the deadline to file a motion for leave to join third parties because it has not shown that, despite its diligence, it could not reasonably have met the scheduling deadline. In its initial motion, it neither acknowledged nor explained why this filing came more than five months after the deadline to seek leave to join additional parties. Hanover noted in its reply that, in its motion for leave to file an amended complaint filed May 31, 2024, Utica changed its theory of liability from Hanover's failure to follow its own auditing procedures to the theory that Keystone acted as Hanover's agent, thus binding Hanover. Although Utica's amended complaint did change its theory of liability, there is nothing to suggest that Hanover was not aware of Keystone's involvement in the dispute and its potential agency relationship prior to the scheduling order's deadline for joining additional parties. The third-party claims may be important because Hanover contends that Keystone should be liable for some, if not all, of a judgment against Hanover, but this importance does not justify the prejudice of the delay that would result from adding a third-party defendant at this point in the case, nor does it justify the potential necessity of additional discovery, requiring further amendments to the scheduling order. Hanover may also seek indemnity and contribution from Keystone in a separate lawsuit. Because of Hanover's lack of diligence

in pursuing this third-party claim, the court denies its motion for leave to file a third-party complaint against Keystone.

*    *    *

For the reasons explained, the court grants in part and denies in part Hanover's motion for summary judgment, denies Utica's motion for partial summary judgment, grants Hanover leave to amend its answer, and denies Hanover's motion for leave to file a third-party complaint.

**SO ORDERED**.

November 5, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 21 -